**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| Graphic Arts Mutual Insurance Company | ) ) | Civil Action No. 0:11-01255-MBS |
| And | ) ) | |
| Utica Mutual Insurance Company, | ) ) | |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| Caldwell Chevrolet, Inc. d/b/a Fred Caldwell's Clover Chevrolet, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Plaintiffs, Graphic Arts Mutual Insurance Company ("Graphic Arts") and Utica Mutual Insurance Company ("Utica") (collectively "Plaintiffs"), filed this declaratory judgment action against Defendant Caldwell Chevrolet, Inc. d/b/a Fred Caldwell's Clover Chevrolet ("Defendant"), seeking a declaration by the court that Plaintiffs do not have an obligation to provide coverage to Defendant under a commercial package insurance policy and a commercial umbrella insurance policy (collectively the "policies"), which polices were issued by Plaintiffs to Defendant. (ECF No. 1.) Specifically, Plaintiffs ask the court to declare that they do not have to defend or indemnify Defendant under the policies for any amount of damages Defendant has to pay as a result of the underlying action. This matter is before the court on Plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 27.) Defendant asserts that the court should deny Plaintiffs' motion and find that coverage exists under the policies. (ECF No. 30.)

For the reasons set forth below, the court **GRANTS** Plaintiffs' motion for summary judgment.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Defendant are as follows.

Defendant is a car dealership incorporated in South Carolina with its principal place of business in South Carolina.  (ECF No. 15, p. 2.)  In April 2007, Graphic Arts issued Defendant a commercial package insurance policy (the "Graphic Arts policy"), which policy provided general liability coverage, auto dealers' errors and omissions liability coverage, and certain other coverages to Defendant.  (ECF Nos. 9-1, 9-2.)  The effective dates of the Graphic Arts policy were April 1, 2007 to April 1, 2008.  (ECF No. 9-1, pp. 1-2.)  The Graphic Arts policy provided certain supplemental coverages for auto dealers pursuant to the Auto Dealers Errors and Omissions Liability endorsement (the "ADEOL endorsement").   The ADEOL endorsement included the following provisions:

> III. Truth in Lending or Leasing - Errors and Omissions Coverage  - A.  We will pay all sums an "insured" legally must pay as damages because of any negligent act, error or omission committed during the policy period for failing to comply with any federal, state, or local: 1. Truth in lending statute, or any statute that specifically regulates disclosures required to complete consumer finance agreements; or 2. Statute that specifically regulates disclosures required to complete consumer lease agreements.  B. We have the right and duty to defend any "insured" against a "suit" asking for these damages even if the allegations of the "suit" are groundless, false or fraudulent.   However, we have no duty to defend an "insured" against a "suit" not covered under part A. above . . . C. This insurance does not apply to any claim or "suit" arising out of:  1. Section 112, Criminal Liability of Title 1 (Truth in Lending Act) of the Consumer Protection Act, (Public Law 90-321:82 Stat. 146 et. seq.); 2. Any dishonest, fraudulent, criminal or intentional act or acts committed by the "insured," any of the partners, officers, employees or agents of the "insured" or other party in interest acting alone or in collusion with others; or 3. "bodily injury" or "property damage." (ECF No. 27-5, p. 2.)

In April 2007, Utica issued Defendant a commercial umbrella insurance policy (the "Utica policy"), which policy provided liability insurance coverage and certain other coverages to Defendant. (ECF No. 9-3.) The effective dates of the Utica policy were April 1, 2007 to April 1, 2008. (ECF No. 9-3, pp. 1-2.)

On September 4, 2007, a host of plaintiffs (the "underlying plaintiffs") filed an action in the Court of Common Pleas for Aiken County, South Carolina, C/A No. 07-CP-02-1232, against Defendant and other automobile dealers (the "underlying defendants"), alleging that the underlying defendants had engaged in a common practice of collecting illegal administrative fees in connection with the sale of automobiles to their customers. (See ECF No. 27-2 (the "underlying action").) The underlying plaintiffs alleged that the underlying defendants set and advertised a sticker price for cars and then upon closing, collected illegal administrative fees as part of a conspiracy to deceive all car buyers, amounting to consumer fraud. (Id. at p. 106.) The underlying plaintiffs alleged that the underlying defendants advertised the illegal "administrative fees" in a misleading manner, portraying the fees to be mandatory, and that this practice was a deceptive way to secretly and artificially raise the sticker price. (Id. at p. 107.) Further, the underlying plaintiffs alleged that the illegal fees were deliberately placed on a separate line item on the customers' invoices along with mandatory fees such as taxes, tags and title, to create the appearance that the car buyers did not have any option but to pay for this fee with every car purchase. (Id.) The underlying plaintiffs further alleged that the underlying defendants did not avail themselves of the limited exception for administrative fees set forth in S.C. Code § 37-2-307, because the underlying defendants falsely claimed that they were charging administrative fees for reimbursement of actual costs when they were actually charging the fees for a profit. (Id. at pp. 107-08.) Based on the foregoing, the underlying complaint contained

3

causes of action for violation of South Carolina Code §§ 56-15-10 to 600 (Count I) and civil conspiracy (Count II); and sought a declaratory judgment declaring that the charging of administrative fees was illegal, permanently enjoining the underlying defendants from charging the illegal fees in the future and disgorging the underlying defendants from all illegal fees previously collected (Count III). (Id. at pp. 109-112.)

Defendant tendered the defense of the underlying action to Graphic Arts and Graphic Arts provided a defense in the underlying action pursuant to a full and complete reservation of rights. (ECF No. 27-1, p. 3.) Thereafter, Plaintiffs initiated this declaratory judgment action in this court on May 24, 2011. (ECF No. 1.) On May 25, 2011, Plaintiffs amended their complaint to remedy a deficiency in the allegations regarding the court's jurisdiction over the matter. (ECF No. 9.) On August 8, 2011, Defendant answered the amended complaint denying that Plaintiffs were entitled to the declaratory relief requested. (ECF No. 15.) Plaintiffs then moved for summary judgment on February 14, 2012. (ECF No. 27.) Defendant filed opposition to Plaintiffs' motion for summary judgment on March 3, 2012, to which Plaintiffs filed a reply in support of summary judgment on March 15, 2012. (ECF Nos. 30, 31.) After receiving consent from the court, Defendant filed supplemental opposition to Plaintiffs' motion for summary judgment on August 15, 2012, to which Plaintiffs filed a supplemental reply in support of summary judgment on August 17, 2012. (ECF Nos. 51, 54.) On August 21, 2012, the court held a hearing on Plaintiffs' motion for summary judgment. (ECF No. 56.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    **Standard**

#### 1.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

    2.   Declaratory Judgment Actions

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

      3.    Coverage Questions and the Duty to Defend Under South Carolina Law

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally are determined by the allegations of the complaint. See Jessco, Inc. v. Builders Mut. Ins. Co., No. 10-1215, 2012 WL 1035721, at *2 (4th Cir. Mar. 29, 2012). If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend. See City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted). Although a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action. Id. at 579; see also Collins

Holding Corp. v. Wausau Underwriters Ins. Co., 666 S.E.2d 897, 899-900 (S.C. 2008).[1]

Moreover, an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer. See USAA Prop & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 798 (S.C. 2008). If an insured has no duty to defend, it will know that it has no duty to indemnify. See Am. S. Ins. Co. v. Moras Roofing, LLC, No. 2:09-1966-PMD, 2010 WL 2710588, at *4 (D.S.C. July 7, 2010).

**B.    Plaintiffs' Claim for Declaratory Judgment**

1.    Bodily Injury and Property Damage Provisions of the Policies

The policies provide coverage for "bodily injury" and "property damage." (ECF Nos. 27-3, p. 2; 27-4, p. 2; 27-6, p. 1.) In their motion for summary judgment, Plaintiffs contend that the underlying action did not allege bodily injury or property damage under the policies. (ECF No. 27-1, pp. 9-10.) Therefore, Plaintiffs argue that the bodily injury and property damage provisions of the policies do not require Plaintiffs to provide coverage. (Id.)

Defendant does not challenge Plaintiffs' assertion that the bodily injury and property damage provisions of the policies do not provide coverage. Accordingly, Plaintiffs are entitled to a declaration that the bodily injury and property damage provisions of the policies do not require Plaintiffs to provide coverage.

2.    Personal and Advertising Injury Provisions of the Policies

The policies provide coverage for "personal and advertising injury." (ECF Nos. 27-4, p. 2; 27-6, p. 5.) Plaintiffs assert that the underlying action does not allege "personal and advertising injury" under the policies, because the allegations in the underlying complaint fail to

---

1 In Collins, the South Carolina Supreme Court found that insurance coverage for negligent acts was inapplicable despite the inclusion of a negligent misrepresentation cause of action in the underlying complaint, because the same facts supporting the intentional tort causes of action also supported the negligence claim. Id. at 899-900. The court found that the underlying facts essentially alleged intentional conduct that barred coverage. Id.

allege a cause of action that would fit within the enumerated offenses under these provisions. (ECF No. 27-1, p. 11.)  Therefore, Plaintiffs argue that the personal and advertising injury provisions of the policies do not require Plaintiffs to provide coverage.  (Id.)

Defendant does not challenge Plaintiffs' assertion that the personal and advertising injury provisions of the policies do not provide coverage.  Accordingly, Plaintiffs are entitled to a declaration that the personal and advertising injury provisions of the policies do not require Plaintiffs to provide coverage.

       3.      Claims for Equitable Relief in the Underlying Action

The policies provide coverage for sums that the insured legally must pay as "damages." (ECF Nos. 27-4, p. 2; 27-6, p. 5.)  In their motion for summary judgment, Plaintiffs contend that claims for equitable relief in Count III of the underlying complaint are not covered by virtue of not being "damages" under the policies.  Plaintiffs assert that although the policies do not define "damages," the Fourth Circuit has held that the word "damages" refers to legal damages and does not extend coverage to claims for equitable relief.   (ECF No. 27-1, p. 11 (citing Cincinnati Ins. Co. v. Milliken & Co., 857 F.2d 979, 981 (4th Cir. 1988)).)  Plaintiffs further assert that the Fourth Circuit has held that under South Carolina law, restitution and disgorgement of profits are "equitable remedies" and not "damages" within the meaning of a liability policy.  (ECF No. 27-1, p. 12 (citing Ellett Bros., Inc. v. U.S. Fid. & Guar., 275 F.3d 384, 388 (4th Cir. 2001)).)

Defendant does not challenge Plaintiffs' assertion that claims for equitable relief in Count III of the underlying complaint are not covered by virtue of not being damages under the policies.  Notwithstanding the lack of a challenge to Plaintiffs' assertion regarding coverage for claims of equitable relief, the court concludes that injunctive relief should be considered covered

damages under the policies.[2]  However, even if injunctive relief is within the definition of damages under the policies, the court must still determine whether coverage is substantially triggered under any provision of the policies.

    4.    Coverage under the ADEOL Endorsement

The ADEOL endorsement provides coverage for damages resulting from "any negligent act, error or omission committed during the policy period for failing to comply with any federal, state, or local: (1) Truth in lending statute, or any statute that specifically regulates disclosures required to complete consumer finance agreements; or (2) Statute that specifically regulates disclosures required to complete consumer lease agreements." (ECF No. 27-5, p. 2.)  Plaintiffs assert that the underlying action fails to allege a claim providing for coverage under the ADEOL endorsement.  Plaintiffs contend that neither S.C. Code §§ 56-15-10 to 600, nor S.C. Code § 37-2-307, which statutes were cited in the underlying complaint, are truth in lending statues, nor do these statutes specifically regulate disclosures required to complete consumer finance agreements or consumer lease agreements, as required by the ADEOL endorsement in order to provide coverage.  (ECF No. 27-1, p. 14.)  Based on the foregoing, Plaintiffs argue that since the underlying complaint in this case does not reference disclosures in a consumer finance or lease agreement, the policies are not triggered and Plaintiffs, therefore, do not have a duty to defend or

---

2 The court finds that the South Carolina Supreme Court has rejected Plaintiff's argument that coverage is unavailable for equitable relief claims. In Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455 (S.C. 2004), the South Carolina Supreme Court construed pollution clean-up costs ordered by the government as "damages" within the meaning of the Policy and rejected the distinction between legal and equitable damages in the definition of "damages" under insurance policies.  Id. at 458-59.  Although Helena did not involve a request for declaratory relief and a permanent injunction, as sought in Count III of the underlying complaint in this case, the South Carolina Supreme Court's rejection of the distinction between legal and equitable damages supports the argument that claims for equitable relief would be within the definition of "damages" under the policies.  See City of Myrtle Beach v. United Nat'l Ins. Co., 739 F. Supp. 2d 876, 885 (D.S.C. 2010) (holding that "damages" for the purpose of insurance coverage could include requests for injunctive relief, noting that the South Carolina Supreme Court in Helena expressly rejected the distinction between legal and equitable remedies made by the Fourth Circuit in Cincinnati and Ellett).  At the summary judgment hearing, counsel for Plaintiffs attempted to address Helena by stating that there is a distinction between a request for injunctive relief, which has a cost element, and the relief authorized by S.C. Code § 37-2-307.

indemnify Defendant.

Plaintiffs further assert that the allegations in the underlying action are not covered under the ADEOL endorsement provision because they arise from dishonest or intentional acts, which are excluded from coverage pursuant to subsection C of the ADEOL endorsement. Subsection C of the ADEOL endorsement provides that the insurance does not apply to any claim or suit arising out of "any dishonest, fraudulent, criminal or intentional act or acts committed by the 'insured' . . . ." (ECF No. 27-5, p. 2.) Plaintiffs contend that this exclusion applies to the allegations made in the underlying action, which allegations include a contention that Defendant was involved in a conspiracy to deceive involving various "dishonest, fraudulent, criminal or intentional acts." (ECF No. 27-1, p. 16 (citing ECF No. 27-2, pp. 106-110).) Therefore, Plaintiffs argue that Defendant's deliberate acts are precluded from coverage by the exclusion in the ADEOL endorsement. (<u>Id.</u>)

In opposing Plaintiffs' motion for summary judgment, Defendant argues that while the underlying complaint does not specifically provide that Defendant's alleged acts of deceiving customers as to the illegal fees was part of the financing for the purchase of the vehicle, the sale of the vehicle and the financing is one ongoing transaction and as such, the acts or omissions alleged against Defendant would fall under the ADEOL endorsement. (ECF No. 30, p. 3 (citing <u>Brewer v. Stokes Kia, Isuzu, Subaru, Inc.</u>, 613 S.E.2d 802, 806-07 (S.C. Ct. App. 2005)).) Defendant next argues that the ADEOL endorsement provides coverage because the underlying complaint involves at least one disclosure statute relating to the sale of the vehicle, which statute can be interpreted as regulating disclosure required to complete finance agreements. (ECF No. 51, pp. 3-4.) Defendant further argues that the exclusion for intentional acts does not bar coverage because there are sections of the underlying complaint that do not mention any

10

deceptive or intentional conduct and that at least one cause of action does not require proof of such intent.  (Id. at pp. 4-5.)  Defendant finally argues that an insurer has an obligation to defend the insured if the underlying complaint creates a possibility of coverage under the insurance policy.  (Id. at p. 5 (citing Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 265 S.E.2d 38, 40 (S.C. 1980)).)  Based on the foregoing, Defendant asserts that Plaintiffs' motion for summary judgment should be denied because Plaintiffs cannot show that there is not any possibility of coverage.  (Id. at p. 6.)

Upon review, the court is required by the language of the ADEOL endorsement to find that coverage is unavailable to Defendant.  First, coverage does not exist under the ADEOL endorsement, because the endorsement provides coverage for amounts that the insured had to pay "because of . . . failing to comply with any federal, state, or local:  Truth in lending statute, or any statute that specifically regulates disclosures required to complete consumer finance agreements; or . . . required to complete consumer lease agreements."  (ECF No. 27-5, p. 2.)  In this case, the underlying complaint does not allege violation of a lending or leasing disclosure statute.

Second, coverage does not exist under the ADEOL endorsement, because subsection C of the endorsement excludes coverage for "[a]ny dishonest, fraudulent, criminal or intentional act or acts committed by the 'insured.'"  (Id.)  In this regard, the facts of the underlying complaint specifically allege intentional conduct by Defendant, which allegations fall expressly within the coverage exclusion of the ADEOL endorsement.  See Collins Holding, 666 S.E.2d at 899 (In an action for a declaratory judgment, the obligation of a liability insurance company to defend and indemnify is determined by the allegations in the complaint.).  Consequently, Plaintiffs are entitled to a declaration that the ADEOL endorsement does not provide coverage based on the

claims of the underlying complaint.

### III.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Plaintiffs' motion for summary judgment.   (ECF No. 27.)   Accordingly, the court declares that the insurance policies issued by Plaintiffs do not provide coverage to Defendant for the claims and allegations in the underlying action.  Plaintiffs further do not have any duty to either provide Defendant a defense in the underlying action or indemnify Defendant for the amount of any judgment and other relief that might be entered against Defendant in the underlying action.

**IT IS SO ORDERED**.

/s/Margaret B. Seymour_____
MARGARET B. SEYMOUR
CHIEF UNITED STATES DISTRICT JUDGE

September 10, 2012
Columbia, South Carolina